## Case No. 5,239.

GARDNER v. The WHITE SQUALL.

[36 Hunt, Mer. Mag. 452; 38 Hunt, Mer. Mag. 322.]

District Court, S. D. New York. Jan., 1857.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

BETTS, District Judge. The bark White Squall, commanded by E. J. Harding, master, sailed from New York for San Francisco on the 17th of February, 1855, and on the 25th of March thereafter put into Rio Janeiro, in distress, for repairs. The master consigned the ship to Graham Bros. & Co. Endeavors were then made to obtain money by bottomry sufficient to make the repairs and outfit necessary to enable the ship to prosecute her voyage to San Francisco. The surveyors of the ship estimated the amount necessary at £2,500 sterling; but no loan could be obtained at a less premium than 75 per cent. The master wrote to the owners for directions from them and the underwriters. None had been received on the 1st of July. In the meantime, the vessel having been made nearly ready for sea, a call, by notice through the papers, was again made for an offer of a loan on bottomry to continue the voyage to San Francisco, to be addressed to the consul's office. No offer being given, the master then advertised for such loan to bring the vessel with her cargo back to New York, but obtained none for that voyage either. The master had sold part of the ship's cargo and applied the proceeds towards the repairs, and entered into a contract of charter for the vessel, when Mr. Lang came to Rio as agent of the owners, and brought £2,200 sterling, which was also expended upon the debts contracted for the repairs. Soon after Lang's arrival, Harding left the ship as master, and Burke, her first mate, was on the 1st of October appointed by Lang, master in his place. He executed the bottomry bond on the 5th of December, 1855. The vessel had been ready for sea for about five months. Burke executed the bond under the direction of Lang, without any knowledge of the necessities of the vessel, but because he was told that Lang must have more money.

Upon the facts in proof the master had no authority in law to give the bottomry hypothecation in question. The debts all accrued from separate credits given the master of the vessel, or her consignees, by mechanics, material men, and others, and were entirely incurred at a very considerable period before the treaty for this hypothecation was on foot with the bottomry lender. These facts were notorious. It was, therefore, well understood that the loan was made to extinguish antecedent debts not contracted under any assurance or expectation of a bottomry security, and was not made to the creditors themselves, but to others who bought in the debts in effect at an abatement of 33⅓ per cent. from the amount. The master could not bind the ship, her cargo, and freight, to the satisfaction of such debts. The Virgin v. Vyfhius, 8 Pet. [33 U. S.] 538; The Aurora, 1 Wheat. [14 U. S.] 96; Abb. Shipp. 200 (note 1); [Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 386. But although the bond was signed by the master, yet he acted in the matter under the direction of the agent of the owners, and not on his own judgment and discretion. This agent was sent to Rio by the owners with funds for the use of the vessel, and, as must be implied, with general powers to act for the owners in respect to the ship. He displaced the original master and substituted another. He called in the bills of the ship, had them all adjusted, and authorized a composition with the creditors. He then arranged with the consignee of the ship for her hypothecation, for the purpose of raising money to satisfy the debts still outstanding. After the borrowing hypothecation was made, he had all the papers, including the protest of the master and crew, the particular bills and vouchers for all the expenses of the ship at Rio, with the bottomry bond, transmitted to the owners. They laid these documents before the adjuster of general average at New York, and obtained from him a computation and allowance of their share of the general average, and claimed and received that share from the underwriters. These facts, in my judgment, import that Lang possessed all the power of the owner to hypothecate the vessel, or, at the least, if such powers were not originally conferred upon him, that the owners ratified and assented to their exercise after being fully advised of his acts and the facts upon which he acted. Story, Ag. § 239. The authority of an owner to bottom a ship at home or abroad, without regard to her necessities, seems no longer a question with the authorities. Abb. Shipp. 192, note 1; 3 Kent, Comm. (6th Ed.) 361; Fland. Mar. Law, § 253. The principal cannot be allowed to screen himself from the unfavorable consequences following the doings of his agent, after taking to himself the benefits secured by them. Strong, Ag. §§ 250, 253, 258. The libellants are accordingly entitled to a decree in their favor for the due enforcement of the bond.